# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

RYAN MOSELY, an individual

Plaintiff,

v.

MIAMI-DADE COUNTY, and
LAZARO SOLIS, in his individual capacity,

Defendants.

Case No.:

_____/

## COMPLAINT AND DEMAND FOR RELIEF

Plaintiff, RYAN MOSELY, by and through the undersigned counsel, hereby files this Complaint and Demand for Relief against Defendants, MIAMI-DADE COUNTY and LAZARO SOLIS (collectively, "Defendants"), and alleges as follows:

## PARTIES

1. Plaintiff Ryan Mosely ("Plaintiff" or "Mosely") is a natural person and resident of Miami-Dade County, Florida, and is otherwise *sui juris*.

2. Defendant Miami-Dade County ("Defendant County" or the "County") is a municipal entity existing under and by the laws of the State of Florida, conducts its business within Miami-Dade County, Florida, and is otherwise *sui juris*.

3. Defendant Lazaro Solis ("Defendant Solis" or "Solis") is a natural person and resident of Miami-Dade County, Florida, and is otherwise *sui juris*.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343. This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a) because Plaintiff's claims under Florida law form the same case or controversy under

Article III of the United States Constitution. Plaintiff's state law claims share common nuclei of operative facts with his federal law claim, and the parties are identical. Resolving all state and federal claims in a single action serves the interests of judicial economy, convenience, and fairness to the parties.

5.     This Court has personal jurisdiction over Defendant County because it is domiciled in Florida.

6.     This Court has personal jurisdiction over Defendant Solis because he is domiciled in Florida.

7.     Venue is appropriate in this district under 28 U.S.C. § 1391(b)–(c) because all Defendants reside in the Southern District of Florida, the tortious acts were committed in this district, the relevant records are maintained in this district, the majority of material witnesses live in this district, and the County employed Plaintiff in this district.

8.     All conditions precedent to bringing this lawsuit, including exhaustion of administrative remedies, have occurred, been performed, or been excused.

## GENERAL ALLEGATIONS

### Background

9.     This is a retaliatory failure-to-promote case stemming from race discrimination.

10.     In or around December 2012, Mosely began working at the Miami-Dade County Property Appraiser's Office ("PAO").

11.     Defendant County promoted Mosely twice: in 2013 to Clerk 1 and in December 2017 to Personal Property Evaluator 1 ("E1").

12.     Mosely was qualified for the E1 position.

13. From December 2012, when Mosely began working for the County, through March 2018, Mosely maintained a stellar rapport among his coworkers and supervisors, with no complaints about his performance and no complaints about his workplace behavior.

14. In fact, Mosely made such a profound impact during his tenure that many of the procedures he employed have become standard practice in the PAO.

15. During Mosely's performance review as an E1, the County rated Mosely in every category as "Satisfactory" or higher.

16. Mosley's supervisor noted: "Mr. Mosely should continue to deliver excellence every day and work closely with his supervisor."

**The History of Discrimination**

17. Soon after the County promoted Mosely to E1, Mosely's upper-level supervisor, Assistant Director Miguel Garcia ("Garcia")—who was responsible for signing off on Mosely's performance evaluations—began directing racial slurs toward Mosely, frequently stating that Mosely had "*niggeritis*."

18. After Mosely complained—first to Garcia; then to PAO Director Cindy Jones ("Jones"); then to Mosely's AFSCME Local 199 Union Representative; and then to Human Resources Representative Bobby Felvaris ("Felvaris")—Mosely was subjected to a series of retaliatory actions, including but not limited to his demotion back down to Clerk 1 just a few short months later.

19. The multiple adverse and retaliatory actions taken against Mosely—including his demotion—culminated in multiple oral and written complaints to his supervisors and administration, multiple written complaints to the Human Rights & Fair Employment Practices Division for Miami-Dade County ("HRFEP"), multiple dual-filed charges of discrimination and

retaliation with the Equal Employment Opportunity Commission ("EEOC") and Florida Commission on Human Relations ("FCHR"), and finally, a (currently pending) federal lawsuit filed against the County in the Southern District of Florida, captioned *Mosely v. Miami-Dade County*, Case No.: 1:22-CV-23907 (hereinafter the "Federal Lawsuit").[1]

**Mosely Made Multiple Complaints and Charges and Participated in their Respective Investigations**

20.     Beginning on or around September 4, 2018, and continuing through September 9, 2022, Mosely was an active participant in several EEOC/FCHR charges and HRFEP complaints and their respective investigations. To wit:

a) On or around September 4, 2018, Mosely submitted his first dual-filed charge of race discrimination and retaliation with the EEOC and FCHR, bearing charge number 510-2018-06602 (hereinafter "First Charge"), which charge would ultimately be the subject of the Federal Lawsuit;

b) On or around October 1, 2018, Mosely submitted his first complaint with HRFEP, alleging race discrimination and retaliation against Jones for events that would ultimately be the subject of the Federal Lawsuit (hereinafter "First HRFEP Complaint");

c) On or around December 17, 2018, Mosely submitted his second complaint with HRFEP, alleging race discrimination and retaliation against Jones and harassment against Garcia for events that would ultimately be the subject of the Federal Lawsuit (hereinafter "Second HRFEP Complaint");

---

1.     Although the discrimination and retaliation detailed in the Federal Lawsuit are not being (re-)litigated here, they do provide the necessary historical backdrop of the County's continued discrimination and retaliation that still plagues Mosely to this day.

d) On or around January 3, 2019, after being denied an interview for an E1 position without explanation, Mosely submitted his third complaint with HRFEP, alleging race discrimination and retaliation against the PAO for events that would ultimately be the subject of the Federal Lawsuit (hereinafter "Third HRFEP Complaint");

e) On or around March 20, 2019, Mosely submitted his fourth complaint with OFEP, alleging race discrimination and retaliation against his supervisor, Jesus Rodriguez ("Rodriguez") for events that would ultimately be the subject of the Federal Lawsuit (hereinafter "Fourth HRFEP Complaint");

f) On or around March 20, 2019, Mosely submitted his fifth complaint with OFEP, alleging race discrimination, retaliation, and whistleblower violations against Garcia for events that would ultimately be the subject of the Federal Lawsuit (hereinafter "Fifth HRFEP Complaint");

g) On or around March 20, 2019, Mosely submitted his sixth complaint with OFEP, alleging race discrimination and retaliation against Jones and the PAO Administration for events that would ultimately be the subject of the Federal Lawsuit (hereinafter "Sixth HRFEP Complaint"); and

h) On or around December 26, 2019, Mosely submitted his second dual-filed charge of race discrimination and retaliation with the EEOC and FCHR, bearing charge number 510-2020-01664 (hereinafter "Second Charge"), which charge would also ultimately become the subject of the Federal Lawsuit.

21. HRFEP combined Mosely's six HRFEP Complaints into a single investigation ("HRFEP Investigation").

22. On or around November 4, 2020, Mosely received notice from HRFEP that it was closing the HRFEP Investigation and provided Mosely information on how to appeal the results of the HRFEP Investigation.

23. Mosely appealed the results of the HRFEP Investigation.

24. On June 17, 2021, Mosely received notice that his appeal hearing was scheduled to take place on July 21, 2021 ("HRFEP Appeal").

25. Meanwhile, the EEOC/FCHR investigative process continued through September 9, 2022, when the EEOC issued Mosely Notices of his Right to Sue for both his First Charge and Second Charge.

**The Retaliation: Part I**

26. In February 2020, the County transferred Mosely from his position as a Clerk 1 in the PAO Tangible Personal Property Division to a Clerk 1 in the PAO Agriculture Division.

27. Mosely excelled in his position as a Clerk 1 in the PAO Agriculture Division. So much so, that Mosely was routinely assigned duties above his job classification.

28. In or around the fall of 2020, Mosely applied for an available Real Estate Evaluator 1 ("RE1") position within the PAO Agriculture Division.

29. On or around November 5, 2020, Mosely interviewed for the available RE1 position.

30. Mosely was qualified for the RE1 position.

31. After the interview, Mosely's immediate supervisor, Raul Nillo ("Nillo"), contacted Deputy Property Appraiser Lazaro Solis ("Defendant Solis" or "Solis") and recommended Mosely for the RE1 position.

32. In or around December 2020, Mosely went on paternity leave after the birth of his newborn son.

33. On or around January 6, 2021, Mosely went to Solis to personally hand-deliver two additional HRFEP complaints (the "New Complaints").

34. Mosely hand-delivered the New Complaints to Solis because, given Mosely's history at the PAO, Solis previously urged Mosely to come to him directly if Mosely ever had future complaints.

35. When Mosely hand-delivered the New Complaints to Solis, Solis expressed his frustration with Mosely's past and present complaints.

36. Solis further explained to Mosely that Mosely "was not being a team player" when Mosely complained about discrimination and retaliation.

37. Solis then shared with Mosely that when Mosely returned to his section following Mosely's paternity leave, Solis would have an "eye-opener" for Mosely.

38. When Mosely returned from paternity leave in mid-to-late January 2021, he received the eye-opener: the County had hired Marcos Piloto—a lesser-qualified Hispanic male—for the RE1 position instead of promoting Mosely.

39. Indeed, Piloto had no experience with the CAMA System utilized by the PAO Agriculture Division. But Mosely did.

40. Piloto had no experience with calculations pictometry utilized by the PAO Agriculture Division. But Mosely did.

41. Piloto had no experience with the AG Database utilized by the PAO Agriculture Division. But Mosely did.

42. Piloto had no experience with agriculture classification processing. But Mosely did.

7

43.     Piloto had no experience with Statutory Review utilized by the PAO Agriculture Division. But Mosely did, and in fact, it was Mosely himself who ended up training Piloto on Statutory Review after Piloto began working in the RE1 position.

44.     After learning that the lesser-qualified Piloto was hired over Mosely—and piecing together Solis' words that it was because Mosely "was not a team player" due to his race discrimination and retaliation complaints and participation in the EEOC/FCHR and HRFEP investigative processes—Mosely suffered a medical crisis from the stress and collapsed in the parking lot of the South Dade Government Center.

45.     After Mosely was denied the promotion to RE1, Mosely complained to Human Resources ("HR").

46.     HR never investigated his complaint.

47.     HRFEP never investigated the complaints Mosely provided Solis because Solis never gave HRFEP Mosely's complaints.

48.     Still, Mosely pressed on. On or around July 9, 2021, Mosely applied for a Tangible Personal Property E1.

49.     Mosely was never given an interview.

50.     When Mosely spoke to Supervisor 1, Greg Zampella ("Zampella") in the Tangible Personal Property PAO, Zampella said: "You're screwing me man."

51.     When Mosely inquired, Zampella explained: *We need people. There were three (3) open positions. They started the interviews. But when you apply, they cancel the interviews. Every time you apply for something, they cancel. You're killing me.*

52.     Mosely understood Zampella's words for what they were: the PAO did not want anything to do with Mosely. They did not like Mosely because he filed all those race discrimination

and retaliation complaints. But because he was the most qualified, the only way the PAO could get around hiring Mosely was by canceling the entire recruitment.

**The Retaliation: Part II (featuring Discrimination)**

53.     In or around mid-to-late Summer 2022, the County posted three E1 job openings.

54.     Munoz and Zampella—who each recognized Mosely's experience and excellence—encouraged Mosely to apply for one of the open E1 positions.

55.     On or around September 5, 2022, Mosely applied for one of the E1 positions.

56.     After meeting the minimum requirements, Mosely was offered an interview on October 14, 2022.

57.     The interview went exceptionally well, and Mosely received a glowing recommendation from Munoz.

58.     However, on or around October 31, 2022, Jones delivered an emphatic message to Mosely: he would never be considered for the position of PPE1 in her division again; and if for some reason he was placed in the role, she would deliberately fail Mosely's probation.

59.     On or around November 17, 2022, Mosely received an official rejection email from the County stating that he had not been selected.

60.     None of the three candidates who were selected had prior experience as an E1.

61.     In fact, one of the chosen candidates—a Hispanic female—did not even meet the minimum education requirements. She therefore should not have been granted an interview, let alone offered the position.

62.     Thereafter, Mosely made multiple requests for a post-interview debriefing.

63.     On or around May 23, 2023, Mosely secured a debriefing session ("Debriefing") with two-thirds of the interview panel—including Zampella and Personal Property Specialist

Supervisor Cris Hernandez ("Hernandez")—along with PAO HR Manager Deanna Narraine ("HR Manager Narraine").

64. During the Debriefing, both Zampella *and* Hernandez shared that Mosely was unanimously recommended as the top candidate for the E1 openings.

65. When Mosely asked Zampella and Hernandez why Mosely was not selected, HR Manager Narraine interrupted and explained that senior management—including Jones, Rodriguez, and Solis—made the ultimate recruitment decisions.

66. Given that Mosely had previously filed discrimination and retaliation complaints against Jones, Rodriguez, and Solis, it is little wonder why Mosely—who was unanimously recommended as the top candidate by the interview panel—was not offered the position: retaliation.

67. Given that Mosely had previously been subjected to discrimination by Jones, Rodriguez, and Solis, it is little wonder why a Hispanic female who did not even meet the minimum education requirements was offered the E1 position over the unanimously recommended Mosely: discrimination.

**The Retaliation: Part III**

68. On or around November 30, 2022, Mosely filed his Federal Lawsuit against the County.

69. On or around February 10, 2023, the County proposed a settlement offer in which the sole consideration given to Mosely would be his promotion to RE1 in exchange for a release of all claims. This offer was rejected.

70. On or around April 21, 2023, the County again proposed a settlement offer in which the sole consideration given to Mosely would be his promotion to RE1 in exchange for a release of all claims. This offer was rejected.

71. Sometime thereafter, the County opened up the RE1 position.

72. Nillo shared with Mosely that there was a pressing need for RE1's in the department and urged Mosely to apply.

73. On or around May 30, 2023, Mosely—after verifying that he met the minimum requirements—submitted an application for an open RE1 position.

74. Mosely received a confirmation email after submitting his application.

75. On or around June 22, 2023, the County and Mosely engaged in mediation for the Federal Lawsuit ("Mediation").

76. During Mediation, the County again proposed a settlement offer in which the sole consideration given to Mosely would be his promotion to RE1. This offer was rejected.

77. Mosely believed he deserved the RE1 position on the merits.

78. Mosely further believed a promotion to RE1 would not make him whole for the County's past discrimination and retaliation.

79. The mediation resulted in an impasse.

80. On July 12, 2023, Mosely received an email from the County informing him that he was not selected for the RE1 position.

81. Not only was Mosely not selected, but Mosely was also never interviewed for the RE1 position.

82. Pursuant to County rules, the only reason an applicant would not be interviewed is if the applicant were unqualified for the position.

83. Yet if the County's multiple settlement offers to promote Mosely to RE1 showed one thing, it is that the County believed Mosely was qualified for the RE1 position.

84. Mosely once again tried to seek answers from the HR Department.

85. The HR Department told Mosely he was neither interviewed nor selected for the RE1 position because—get this—Mosely "never applied."

86. But had Mosely not applied, Mosely would not have received a confirmation email confirming his application.

87. Had Mosely not applied, Mosely would not have received an email informing him he was not selected for the position *in which he applied*.

88. During the Mediation, the County offered Mosely advice that it would be "much easier" for Mosely to find a job once the Federal Lawsuit was dropped or settled. It turns out, this was not advice; it was a warning.

89. Indeed, so long as Mosely continued to pursue vindication of his federal and state protected rights under Title VII and the FCRA, the County would not interview him for open positions in which he is qualified and it would not promote him to positions in which he is unanimously recommended.

**Mosely's Renewed Quest for Vindication**

90. On January 6, 2022, Mosely filed a detailed inquiry with the EEOC to dual-file charges of retaliation with the EEOC and FCHR. This inquiry resulted in a dual-filed charge of discrimination and retaliation with the EEOC and FCHR on May 20, 2022 (hereinafter "Third Charge"), which charge "relates back" to Mosely's January 6, 2022, inquiry.

12

91.     On September 11, 2023, Mosley filed a dual-filed charges of discrimination and retaliation with the EEOC and FCHR (hereinafter "Fourth Charge"). Mosely subsequently amended the Fourth Charge on January 11, 2024.

92.     Over one-hundred eighty (180) days have elapsed since the filing of Mosely's Third and Fourth charges with the FCHR. Accordingly, Mosely has exhausted his administrative remedies pursuant to section 760.11, *Florida Statutes*, and he can therefore bring claims of discrimination and retaliation under the Florida Civil Rights Act ("FCRA").

93.     On April 29, 2024, Mosely was issued a Notice of his Right to Sue from the EEOC with regard to his Fourth Charge. Accordingly, Mosely has exhausted his administrative remedies and he can therefore bring claims of discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended ("Title VII").

94.     Mosely timely files suit to vindicate his rights under Florida and federal law.

## COUNT I — VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT: RETALIATION
### (Fla. Stat. § 760.10(7))
**(as against Defendant Miami-Dade County)**

95.     Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through 94 above, as though fully set forth herein.

96.     This is an action for violation of the FCRA's opposition clause, which provides, in pertinent part: "It is an unlawful employment practice for an employer . . . [t]o discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section . . . ." Fla. Stat. § 760.10(7); *see also Carter v. Health Management Associates*, 989 So.2d 1258, 1263 (Fla. 2d DCA 2008) (differentiating the FCRA's "opposition clause" from the FCRA's "participation clause").

97. At all times material hereto, Plaintiff was an Employee of the County and the County was an Employer as defined by section 760.02(7), *Florida Statutes*. *See also* Fla. Stat. § 760.02(6) (including in the definition of person "governmental entity or agency").

98. Plaintiff is African American, and as such, is a member of a protected class under the FCRA.

99. At all times material hereto, Plaintiff was qualified for the position he held.

100. At all times material hereto, Plaintiff was qualified for the positions in which he applied.

101. Defendant County—through the conduct of its agents, servants, and/or employees—retaliated against Plaintiff after Plaintiff opposed Defendant County's unlawful race discrimination and retaliation by making several protected complaints, which complaints include, but are not limited to: the First HRFEP Compliant; the Second HRFEP Complaint; the Third Second HRFEP Complaint; the Fourth Second HRFEP Complaint; the Fifth Second HRFEP Complaint; the Sixth Second HRFEP Complaint; and the New Complaints (collectively "Protected Complaints").

102. Defendant County's adverse retaliatory actions, namely, its refusal to interview, hire, and/or promote Plaintiff because Plaintiff made Protected Complaints, constitute prohibited retaliatory employment practices in violation of the FCRA.

103. As a direct and proximate result of Defendant County's acts as alleged herein, Plaintiff has suffered and continues to suffer substantial economic damages, including but not limited to, loss of earning capacity, back pay and front pay, past, present, and future income, loss of retirement benefits, compensatory damages, lost wages and other employee benefits, all to his detriment, in an amount to be determined according to proof.

104. As a direct and proximate result of Defendant County's acts as alleged herein, Plaintiff has suffered and will continue to suffer substantial economic and emotional distress damages in an amount to be determined according to proof.

105. Defendant County committed the acts alleged herein despicably, maliciously, fraudulently, and/or oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice and in willful and conscious disregard of Plaintiff's rights. Plaintiff, pursuant to section 760.11(5), *Florida Statutes*, is entitled to recover punitive damages from Defendant County in the amount of one hundred thousand dollars ($100,000.00) without first seeking leave of court.

106. Plaintiff, pursuant to section 760.11(5), *Florida Statutes*, is also entitled to recover reasonable attorneys' fees and costs of said suit in an amount to be shown according to proof.

**WHEREFORE**, Plaintiff, RYAN MOSELY, hereby demands judgment against Defendant, MIAMI-DADE COUNTY, for his actual and compensatory damages, emotional distress damages, punitive damages, as well as his costs, interest, attorney's fees, declaratory and injunctive relief, and for such other and further relief the Court may deem just and proper under the circumstances.

## COUNT II — VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT: RETALIATION
### (Fla. Stat. § 760.10(7))
**(as against Defendant Miami-Dade County)**

107. Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through 94 above, as though fully set forth herein.

108. This is an action for violation of the FCRA's participation clause, which provides, in pertinent part: "It is an unlawful employment practice for an employer . . . [t]o discriminate against any person . . . because that person has made a charge, testified, assisted, or participated in

any manner in an investigation, proceeding, or hearing under this section." Fla. Stat. § 760.10(7); *see also Carter v. Health Management Associates*, 989 So.2d 1258, 1263 (Fla. 2d DCA 2008) (differentiating the FCRA's "opposition clause" from the FCRA's "participation clause").

109. At all times material hereto, Plaintiff was an Employee of the County and the County was an Employer as defined by section 760.02(7), Florida Statutes. *See also* Fla. Stat. § 760.02(6) (including in the definition of person "governmental entity or agency").

110. Plaintiff is African American, and as such, is a member of a protected class under the FCRA.

111. At all times material hereto, Plaintiff was qualified for the position he held.

112. At all times material hereto, Plaintiff was qualified for the positions in which he applied.

113. Defendant County—through the conduct of its agents, servants, and/or employees—retaliated against Plaintiff after Plaintiff made a charge, testified, assisted, and/or participated in investigations, proceedings, and/or hearings, including, but not limited to: the First Charge; the Second Charge; the Federal Lawsuit; and the Third Charge (collectively "Protected Participation").

114. Defendant County's adverse retaliatory actions, namely, its refusal to interview, hire, and/or promote Plaintiff because Plaintiff engaged in Protected Participation, constitute prohibited retaliatory employment practices in violation of the FCRA.

115. As a direct and proximate result of Defendant County's acts as alleged herein, Plaintiff has suffered and continues to suffer substantial economic damages, including but not limited to, loss of earning capacity, back pay and front pay, past, present, and future income, loss

16

of retirement benefits, compensatory damages, lost wages and other employee benefits, all to his detriment, in an amount to be shown according to proof.

116. As a direct and proximate result of Defendant County's acts as alleged herein, Plaintiff has suffered and will continue to suffer substantial economic and emotional distress damages in an amount to be determined according to proof.

117. Defendant County committed the acts alleged herein despicably, maliciously, fraudulently, and/or oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice and in willful and conscious disregard of Plaintiff's rights. Plaintiff, pursuant to section 760.11(5), Florida Statutes, is entitled to recover punitive damages from Defendant County in the amount of one hundred thousand dollars ($100,000.00) without first seeking leave of court.

118. Plaintiff, pursuant to section 760.11(5), Florida Statutes, is also entitled to recover reasonable attorneys' fees and costs of said suit in an amount to be shown according to proof.

**WHEREFORE**, Plaintiff, RYAN MOSELY, hereby demands judgment against Defendant, MIAMI-DADE COUNTY, for his actual and compensatory damages, emotional distress damages, punitive damages, as well as his costs, interest, attorney's fees, declaratory and injunctive relief, and for such other and further relief the Court may deem just and proper under the circumstances.

### COUNT III — VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT: RACE DISCRIMINATION (Fla. Stat. § 760.10(1)(a))
**(as against Defendant Miami-Dade County)**

119. Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through 94 above, as though fully set forth herein.

17

120. This is an action for violation of the FCRA, which provides, in pertinent part: "It is an unlawful employment practice for an employer . . . to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." Fla. Stat. § 760.10(1)(a).

121. At all times material hereto, Plaintiff was an Employee of the County and the County was an Employer as defined by section 760.02(7), Florida Statutes. *See also* Fla. Stat. § 760.02(6) (including in the definition of person "governmental entity or agency").

122. Plaintiff is African American, and as such, is a member of a protected class under the FCRA.

123. At all times material hereto, Plaintiff was qualified for the position he held.

124. At all times material hereto, Plaintiff was qualified for the positions in which he applied.

125. Defendant County—through the conduct of its agents, servants, and/or employees—discriminated against Plaintiff by failing and/or refusing to interview, hire, and/or promote him on the basis of his race.

126. Defendant County's actions, as described above, constitute prohibited employment practices in violation of the FCRA.

127. Even if Defendant County had legitimate, non-discriminatory reasons, Plaintiff's race was, at a minimum, a motivating factor in Defendant County's failure and/or refusal to hire him.

128. As a direct and proximate result of Defendant County's acts as alleged herein, Plaintiff has suffered and continues to suffer substantial economic damages, including but not limited to, loss of earning capacity, back pay and front pay, past, present, and future income, loss

of retirement benefits, compensatory damages, lost wages and other employee benefits, all to his detriment, in an amount to be shown according to proof.

129. As a direct and proximate result of Defendant County's acts as alleged herein, Plaintiff has suffered and will continue to suffer substantial economic and emotional distress damages in an amount to be determined according to proof.

130. Defendant County committed the acts alleged herein despicably, maliciously, fraudulently, and/or oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice and in willful and conscious disregard of Plaintiff's rights. Plaintiff, pursuant to section 760.11(5), Florida Statutes, is entitled to recover punitive damages from Defendant County in the amount of one hundred thousand dollars ($100,000.00) without first seeking leave of court.

131. Plaintiff, pursuant to section 760.11(5), Florida Statutes, is also entitled to recover reasonable attorneys' fees and costs of said suit in an amount to be shown according to proof.

**WHEREFORE**, Plaintiff, RYAN MOSELY, hereby demands judgment against Defendant, MIAMI-DADE COUNTY, for his actual and compensatory damages, emotional distress damages, punitive damages, as well as his costs, interest, attorney's fees, declaratory and injunctive relief, and for such other and further relief the Court may deem just and proper under the circumstances.

## COUNT IV — VIOLATION OF THE CIVIL RIGHTS ACT OF 1964: RETALIATION
### (as against Defendant Miami-Dade County)

132. Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through 94 above, as though fully set forth herein.

133. This is an action for violation of the Title VII's opposition clause, which provides, in pertinent part: "It shall be an unlawful employment practice for an employer to discriminate

19

against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter . . . ." 42 U.S.C. § 2000e-3(a); *see also Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1185 (11th Cir. 1997) (differentiating Title VII's "opposition clause" from Title VII's "participation clause").

134. Discrimination based on race and retaliation for complaining about same are unlawful employment practices under Title VII. *See* 42 U.S.C. § 2000e-2(a)(1) ("It shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ."); 42 U.S.C. § 2000e-3(a).

135. At all times material hereto, Plaintiff was an Employee as defined by 42 U.S.C. § 2000e(f).

136. At all times material hereto, Defendant County was an Employer as defined by 42 U.S.C. § 2000e(b). *See also* 42 U.S.C. § 2000e(a) (including in the definition of person "governments, governmental agencies, [and] political subdivisions").

137. Plaintiff is African American, and as such, is a member of a protected class under Title VII.

138. At all times material hereto, Plaintiff was qualified for the position he held.

139. At all times material hereto, Plaintiff was qualified for the positions in which he applied.

140. Defendant County—through the conduct of its agents, servants, and/or employees—retaliated against Plaintiff after Plaintiff opposed Defendant County's unlawful race discrimination and retaliation by making several protected complaints, which complaints include, but are not limited to: the First HRFEP Compliant; the Second HRFEP Complaint; the Third

Second HRFEP Complaint; the Fourth Second HRFEP Complaint; the Fifth Second HRFEP Complaint; the Sixth Second HRFEP Complaint; and the New Complaints (collectively "Protected Complaints").

141. Defendant County's adverse retaliatory actions, namely, its refusal to interview, hire, and/or promote Plaintiff because Plaintiff made Protected Complaints, constitute prohibited retaliatory employment practices in violation of Title VII.

142. As a direct and proximate result of Defendant County's acts as alleged herein, Plaintiff has suffered and continues to suffer substantial economic damages, including but not limited to, loss of earning capacity, back pay and front pay, past, present, and future income, loss of retirement benefits, compensatory damages, lost wages and other employee benefits, all to his detriment, in an amount to be shown according to proof.

143. As a direct and proximate result of Defendant County's acts as alleged herein, Plaintiff has suffered and will continue to suffer substantial economic and emotional distress damages in an amount to be determined according to proof.

144. Defendant County committed the acts alleged herein intentionally, despicably, maliciously, fraudulently, and/or oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice and in willful and conscious disregard of Plaintiff's rights. Plaintiff, pursuant to 42 U.S.C. § 1981a, is therefore entitled to recover punitive damages.

145. Plaintiff, pursuant to section 42 U.S.C. § 2000e-5(k), is also entitled to recover reasonable attorneys' fees and costs of said suit in an amount to be shown according to proof.

**WHEREFORE**, Plaintiff, RYAN MOSELY, hereby demands judgment against Defendant, MIAMI-DADE COUNTY, for his actual and compensatory damages, emotional

distress damages, punitive damages, as well as his costs, interest, attorney's fees, declaratory and injunctive relief, and for such other and further relief the Court may deem just and proper under the circumstances.

## COUNT V — VIOLATION OF THE CIVIL RIGHTS ACT OF 1964: RETALIATION
### (as against Defendant Miami-Dade County)

146. Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through 94 above, as though fully set forth herein.

147. This is an action for violation of the Title VII's participation clause, which provides, in pertinent part: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a); *see also Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1185 (11th Cir. 1997) (differentiating Title VII's "opposition clause" from Title VII's "participation clause").

148. At all times material hereto, Plaintiff was an Employee as defined by 42 U.S.C. § 2000e(f).

149. At all times material hereto, Defendant County was an Employer as defined by 42 U.S.C. § 2000e(b). *See also* 42 U.S.C. § 2000e(a) (including in the definition of person "governments, governmental agencies, [and] political subdivisions").

150. Plaintiff is African American, and as such, is a member of a protected class under Title VII.

151. At all times material hereto, Plaintiff was qualified for the position he held.

152. At all times material hereto, Plaintiff was qualified for the positions in which he applied.

153. Defendant County—through the conduct of its agents, servants, and/or employees—retaliated against Plaintiff after Plaintiff made a charge, testified, assisted, and/or participated in investigations, proceedings, and/or hearings, including, but not limited to: the First Charge; the Second Charge; the Federal Lawsuit; and the Third Charge (collectively "Protected Participation").

154. Defendant County's adverse retaliatory actions, namely, its refusal to interview, hire, and/or promote Plaintiff because Plaintiff engaged in Protected Participation, constitute prohibited retaliatory employment practices in violation of Title VII.

155. As a direct and proximate result of Defendant County's acts as alleged herein, Plaintiff has suffered and continues to suffer substantial economic damages, including but not limited to, loss of earning capacity, back pay and front pay, past, present, and future income, loss of retirement benefits, compensatory damages, lost wages and other employee benefits, all to his detriment, in an amount to be shown according to proof.

156. As a direct and proximate result of Defendant County's acts as alleged herein, Plaintiff has suffered and will continue to suffer substantial economic and emotional distress damages in an amount to be determined according to proof.

157. Defendant County committed the acts alleged herein intentionally, despicably, maliciously, fraudulently, and/or oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice and in willful and conscious disregard of Plaintiff's rights. Plaintiff, pursuant to 42 U.S.C. § 1981a, is therefore entitled to recover punitive damages.

158. Plaintiff, pursuant to section 42 U.S.C. § 2000e-5(k), is also entitled to recover reasonable attorneys' fees and costs of said suit in an amount to be shown according to proof.

**WHEREFORE**, Plaintiff, RYAN MOSELY, hereby demands judgment against Defendant, MIAMI-DADE COUNTY, for his actual and compensatory damages, emotional distress damages, punitive damages, as well as his costs, interest, attorney's fees, declaratory and injunctive relief, and for such other and further relief the Court may deem just and proper under the circumstances.

### COUNT VI — VIOLATION OF THE CIVIL RIGHTS ACT OF 1964: RACE DISCRIMINATION
### (as against Defendant Miami-Dade County)

159.	Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through 94 above, as though fully set forth herein.

160.	This is an action for violation of Title VII, which provides, in pertinent part: "It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1).

161.	At all times material hereto, Plaintiff was an Employee as defined by 42 U.S.C. § 2000e(f).

162.	At all times material hereto, Defendant County was an Employer as defined by 42 U.S.C. § 2000e(b). *See also* 42 U.S.C. § 2000e(a) (including in the definition of person "governments, governmental agencies, [and] political subdivisions").

163.	Plaintiff is African American, and as such, is a member of a protected class under the FCRA.

164.	At all times material hereto, Plaintiff was qualified for the position he held.

165. At all times material hereto, Plaintiff was qualified for the positions in which he applied.

166. Defendant County—through the conduct of its agents, servants, and/or employees—discriminated against Plaintiff by failing and/or refusing to interview, hire, and/or promote him on the basis of his race.

167. Defendant County's actions, as described above, constitute prohibited employment practices in violation of Title VII.

168. Even if Defendant County had legitimate, non-discriminatory reasons, Plaintiff's race was, at a minimum, a motivating factor in Defendant County's failure and/or refusal to hire him.

169. As a direct and proximate result of Defendant County's acts as alleged herein, Plaintiff has suffered and continues to suffer substantial economic damages, including but not limited to, loss of earning capacity, back pay and front pay, past, present, and future income, loss of retirement benefits, compensatory damages, lost wages and other employee benefits, all to his detriment, in an amount to be shown according to proof.

170. As a direct and proximate result of Defendant County's acts as alleged herein, Plaintiff has suffered and will continue to suffer substantial economic and emotional distress damages in an amount to be determined according to proof.

171. Defendant County committed the acts alleged herein intentionally, despicably, maliciously, fraudulently, and/or oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice and in willful and conscious disregard of Plaintiff's rights. Plaintiff, pursuant to 42 U.S.C. § 1981a, is therefore entitled to recover punitive damages.

172. Plaintiff, pursuant to section 42 U.S.C. § 2000e-5(k), is also entitled to recover reasonable attorneys' fees and costs of said suit in an amount to be shown according to proof.

**WHEREFORE**, Plaintiff, RYAN MOSELY, hereby demands judgment against Defendant, MIAMI-DADE COUNTY, for his actual and compensatory damages, emotional distress damages, punitive damages, as well as his costs, interest, attorney's fees, declaratory and injunctive relief, and for such other and further relief the Court may deem just and proper under the circumstances.

## COUNT VI — 42 U.S.C. § 1983: VIOLATION 42 U.S.C. § 1981 (RETALIATION)
### (as against Defendant Lazaro Solis in his individual capacity)

173. Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through 94 above, as though fully set forth herein.

174. This is an action for violation of 42 U.S.C. § 1981 through 42 U.S.C. § 1983 against Defendant Solis in his individual capacity.

175. The rights protected by section 1981 "are protected against . . . impairment under color of State law." 42 U.S.C. § 1981(c).

176. Section 1983 provides, in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ." 42 U.S.C. § 1983.

177. Defendant Solis is a "person" as defined by 42 U.S.C. § 1983.

178. Plaintiff is a "citizen of the United States or other person within the jurisdiction thereof" as defined by 42 U.S.C. § 1983.

179. Section 1981 provides: "All persons within the jurisdiction of the United States shall have the same right in every State . . . to make and enforce contracts . . . and to the full and equal benefit of all laws . . . ." 42 U.S.C. § 1981(a).

180. Plaintiff is a Black African American. As a Black African American, Plaintiff is a member of a protected class under the meaning of 42 U.S.C. § 1981.

181. At all times material hereto, Plaintiff was an at-will employee of Defendant County.

182. At-will employment in Florida is recognized as a contractual relationship for the purposes of applying § 1981. *Knight v. Palm City Millwork & Supply Co.*, 78 F. Supp. 2d 1345, 1348 (S.D. Fla. 1999).

183. At all times material hereto, Plaintiff was qualified for the position he held.

184. At all times material hereto, Plaintiff was qualified for the positions in which he applied.

185. Defendant Solis' intentional retaliatory actions, as set forth herein, deprived Plaintiff of the rights, privileges, and/or immunities guaranteed under 42 U.S.C. § 1981.

186. By violating Plaintiff's rights under 42 U.S.C. § 1981, Defendant Solis violated Plaintiff's rights under 42 U.S.C. § 1983; as such, its remedies are implicated.

187. Defendant Solis acted under color of law to deprive Plaintiff of Plaintiff's rights secured by 42 U.S.C. §§ 1981 and 1983 by retaliating against Plaintiff after Plaintiff engaged in protected activities, including: (i) opposing Defendant County's and Defendant Solis's discriminatory and retaliatory practices against Plaintiff on the basis of Plaintiff's race and/or color; and (ii) making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing against Defendant County's and Defendant Solis's

discriminatory and retaliatory practices against Plaintiff on the basis of Plaintiff's race and/or color.

188. Specifically, Defendant Solis retaliated against Plaintiff by, *inter alia*, denying him opportunities for advancement, denying him interviews, denying him promotions, denying him the opportunities to be hired for new positions, and more.

189. At all material times hereto, the contours of Plaintiff's rights were clearly established, and sufficiently clear, such that any reasonable official would have understood that subjecting an employee to discrimination and/or retaliation based on race would violate the employee's rights under section 1981.

190. At all times material hereto, Defendant Solis was an official decisionmaker for Defendant County with final decision-making authority regarding ultimate employment decisions, including but not limited to decisions to hire, terminate, promote, and/or transfer employees such as Plaintiff.

191. Defendant Solis exercised his final decision-making authority when he failed to hire and/or promote Plaintiff on multiple occasions, which resulted in the denial of the opportunities for Plaintiff to enter into a new and distinct relation between Plaintiff and his employer.

192. As a direct and proximate result of Defendant Solis' acts as alleged herein, Plaintiff has suffered and will continue to suffer substantial economic and emotional distress damages in an amount to be determined according to proof.

193. Defendant Solis' actions as set forth above were undertaken intentionally, willfully, wantonly, maliciously, and with reckless or callous indifference to the federally protected rights

of the Plaintiff and therefore, Plaintiff is entitled to recover punitive damages from Defendant Solis. *See Smith v. Wade*, 461 U.S. 30, 56 (1983).

194.     As a result of Defendant Solis' unlawful acts as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of suit under 42 U.S.C. § 1988(b)

**WHEREFORE**, Plaintiff, RYAN MOSELY, hereby demands judgment against Defendant, LAZARO SOLIS, for his actual and compensatory damages, emotional distress damages, punitive damages, as well as his costs, interest, attorney's fees, declaratory and injunctive relief, and for such other and further relief the Court may deem just and proper under the circumstances.

## <u>DEMAND FOR JURY TRIAL</u>

As to each count, Plaintiff RYAN MOSELY respectfully requests a trial by jury on all issues so triable.

Dated this 10th day of July 2024.

Respectfully submitted,

By:*/s/ Reid Levin*
Reid Levin, Esq.
Florida Bar No. 1038933
**REID LEVIN, PLLC**
P.O. Box 880682
Boca Raton, FL 33488
Phone: (561) 866-6089
Email: reid@reidlevinpllc.com

***Attorney for Plaintiff Ryan Mosely***
